**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

**CRYSTAL REVELS,** *as Administratrix of the Estate*
*of Michael Revels***,**

                                    **Plaintiff,**

      **vs.**                                            **9:17-cv-0088**
                                                  **(MAD/TWD)**

**CORRECTIONAL MEDICAL CARE, INC.,** *et al.***,**

                                **Defendants.**
_____

**APPEARANCES:**                             **OF COUNSEL:**

**LAW OFFICES OF ELMER R. KEACH, III, P.C.**    **ELMER R. KEACH, III, ESQ.**
One Pine West Plaza - Suite 109                    **MARIA K. DYSON, ESQ.**
Albany, New York 12205
Attorneys for Plaintiff

**STEINBERG, SYMER & PLATT, LLP**          **JONATHAN E. SYMER, ESQ.**
Steinberg, Symer & Platt, LLP
27 Garden Street
Poughkeepsie, New York 12601
Attorneys for Defendants Correctional Medical
Care, Inc., CBH Medical, P.C., Emre Umar,
and Deiah Farley

**THUILLEZ, FORD LAW FIRM**                 **MOLLY C. CASEY, ESQ.**
20 Corporate Woods Boulevard - 3rd Floor
Albany, New York 12211-1715
Attorneys for Defendant Russell Fricke

**GOLDBERG SEGALLA, LLP**               **CHELSEA E. MANOCCHI, ESQ.**
8 Southwoods Boulevard - Suite 300        **JONATHAN BERNSTEIN, ESQ.**
Albany, New York 12211-2526
Attorneys for Defendants Schenectady County,
Dominic D'Agostino, and Jim Barrett

**Mae A. D'Agostino, U.S. District Judge:**

## MEMORANDUM-DECISION AND ORDER

## I. INTRODUCTION

Plaintiff Crystal Revels, as administratrix of the estate of Michael Revels, brought this action alleging federal and state claims against Defendants Correctional Medical Care, Inc. ("CMC"), CBH Medical, P.C. ("CBH"), Emre Umar, Nurse Deiah Farley, John Does 1-3 (collectively, the "CMC Defendants"), Schenectady County, Sheriff Dominic D'Agostino, Jail Administrator Jim Barrett (collectively, the "County Defendants"), and Doctor Russell Fricke. *See* Dkt. No. 1.[1]  Plaintiff's claims arise out of Mr. Revels's medical care while incarcerated at the Schenectady County Jail.  Presently before the Court are three separate motions to dismiss and a motion to strike filed by Defendants.  *See* Dkt. Nos. 27, 28, 30.  For the following reasons, the motions are granted in part and denied in part.

## II. BACKGROUND[2]

### A.    The Decedent's Medical Care

When Michael Revels entered Schenectady County jail on September 9, 2015, he was dealing with a number of health problems.  *See* Dkt. No. 1 at ¶ 15.  Six months earlier, Mr. Revels had undergone a surgical procedure to remove a cancerous tumor from his kidney.  *See id.* at ¶ 16. Though the surgery was successful and his cancer was in remission, Mr. Revels required a range of medication to support his kidney function, including diuretics.  *See id.*  Additionally, Mr. Revels suffered from chronic heart disease, diabetes, and hypertension, and those conditions required other medication.  *See id.* at ¶ 17.  Therefore, Mr. Revels had a complicated medication regimen that required close supervision.  *See id.*

---

[1] John Does 1-3 are unidentified medical staff at the Schenectady County Jail who were responsible for providing medical treatment to Mr. Revels.  *See* Dkt. No. 1 at ¶ 14.

[2] The following facts are based on the allegations in Plaintiff's complaint.  *See* Dkt. No. 1.

2

In jail, that medication regimen was frequently disrupted.  *See id.* at ¶ 18.  Sometimes Mr. Revels received the wrong medication, other times he received cheaper and less effective medication, and he often received no medication at all.  *See id.*  As a result, Mr. Revels began experiencing symptoms including severe bloating, weakness, fatigue, disorientation, incoherency, extreme weight gain, motor impairment, episodes of unconsciousness, episodes of paralysis, and confusion.  *See id.*  Defendant Fricke, the doctor at Schenectady County Jail, and Defendant Farley, a registered nurse employed at the jail, were well aware of Mr. Revels's declining health. *See id.* at ¶ 19.

Shortly after arriving at the jail, Mr. Revels underwent urinalysis as well as a Blood Urine and Nitrogen Test, both of which showed kidney problems.  *See id.*  During his ten weeks in Schenectady County Jail, Mr. Revels's kidney function was repeatedly tested, and the tests consistently showed dangerously poor kidney function.  *See id.* at ¶ 20.  Additionally, Mr. Revels showed physical symptoms—including massive weight gain and bloating—indicative of kidney failure.  *See id.*  Throughout his time in jail, Mr. Revels wrote several sick call slips complaining of his various ailments, and he repeatedly voiced concern about the potential return of his kidney cancer.  *See id.* at ¶ 21.  Despite Mr. Revels's declining health, Defendant Fricke did not contact Mr. Revels's specialists or refer him to an outside doctor who was qualified to address Mr. Revels's condition.  *See id.* at ¶ 22.  Instead, Defendant Fricke unilaterally decided to withhold "various medications" from Mr. Revels.  *See id.*

On November 18, 2015, corrections officers discovered Mr. Revels unconscious on the ground.  *See id.* at ¶ 23.  For several minutes, the medical staff was unable to rouse him.  *See id.* When Mr. Revels finally regained consciousness, he was unable to communicate for "a significant period of time."  *See id.*  The medical staff described the incident as a "paralytic

3

episode"; it was not the first such episode during Mr. Revels's time in jail. *See id.* Despite Mr. Revels's paralytic episode on November 18, 2015, and despite the many other signs and symptoms of his poor health, he was not hospitalized or referred to a specialist. *See id.* at ¶ 24. Two days later, Mr. Revels was discovered on the floor of his cell—he was weak, wheezing, and suffering from auditory and visual hallucinations. *See id.* Only at that point was Mr. Revels sent to the hospital, but his condition had already deteriorated past the point of recovery. *See id.* He was mostly incoherent and on life support until his death on November 25, 2015. *See id.*

At the hospital, Mr. Revels was diagnosed with Hyperkalemia and Respiratory Acidosis. *See id.* at ¶ 25. Hyperkalemia involves excessive potassium levels in the blood and can be caused by failure to appropriately monitor blood thinner and hypotension medications. *See id.* Mr. Revels eventually died from a Myocardial Infarction, which can be caused by Hyperkalemia and Respiratory Acidosis. *See id.* According to Plaintiff, Mr. Revels's death could have been prevented if he had received the appropriate medication, been monitored by a specialist, or been sent to the hospital. *See id.*

**B.    CMC and CBH**

CMC is a corporation that provides medical care at numerous county jails, and Defendant Umar is the president of CMC. *See id.* at ¶¶ 6, 8, 27. CMC has "engaged in a well-documented pattern and practice of providing inadequate and unqualified medical providers at the various facilities they manage, as well as inadequate medical and mental health care in general." *See id.* at ¶ 27. The complaint includes pages of troubling allegations regarding CMC's business practices and its track record of providing inadequate care in county jails throughout New York State. *See id.* at ¶¶ 26-42. But based on the allegations in the complaint, it is not clear what role, if any, CMC had at Schenectady County Jail during the time in question.

Plaintiff alleges that CBH is responsible for providing medical at the Schenectady County Jail. *See id.* at ¶ 7.[3] Plaintiff also alleges that, "upon information and belief, CBH Medical, P.C. is owned by Correctional Medical Care, Inc." *See id.* But the complaint includes no other allegations regarding CMC's relationship to CBH or CMC's role at the Schenectady County Jail. Additionally, the complaint does not contain any allegations relating to CBH or its policies, practices, or history of providing medical care.

## C.    Procedural History

On January 26, 2017, Plaintiff Crystal Revels filed the complaint in this action. Plaintiff alleges three different causes of action: (1) deliberate indifference to a serious medical need in violation of the Fourteenth Amendment as to all Defendants except D'Agostino and Barrett; (2) implementation of municipal policies that violated Mr. Revels's constitutional rights as to Defendants CMC, CBH, Umar, Fricke, Schenectady County, D'Agostino, and Barrett; and (3) conscious pain and suffering and wrongful death under New York law as to all Defendants. *See id.* at ¶¶ 47-63.

Defendants filed three separate motions to dismiss. The County Defendants filed one motion to dismiss. *See* Dkt. No. 27. Defendant Russell Fricke filed a separate motion to dismiss. *See* Dkt. No. 28. Finally, the CMC Defendants move to dismiss and move to strike certain allegations in the complaint. *See* Dkt. No. 30.

## III. LEGAL STANDARD

---

[3] Plaintiffs actually allege that CBH "is responsible for providing medical care at the Monroe Correctional Facility." *See* Dkt. No. 1 at ¶ 7. But based on representations made in the parties' briefs, the Court presumes that this was an error, and that Plaintiff's counsel intended to allege that CBH is responsible for providing medical care at the Schenectady County Jail. *See* Dkt. No. 30-2 at 14; Dkt. No. 40 at 9.

A motion to dismiss for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of the party's claim for relief. *See Patane v. Clark*, 508 F.3d 106, 111-12 (2d Cir. 2007). In considering the legal sufficiency, a court must accept as true all well-pleaded facts in the pleading and draw all reasonable inferences in the pleader's favor. *See ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007) (citation omitted). This presumption of truth, however, does not extend to legal conclusions. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). Although a court's review of a motion to dismiss is generally limited to the facts presented in the pleading, the court may consider documents that are "integral" to that pleading, even if they are neither physically attached to, nor incorporated by reference into, the pleading. *See Mangiafico v. Blumenthal*, 471 F.3d 391, 398 (2d Cir. 2006) (quoting *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152-53 (2d Cir. 2002)); *see also Sutton ex rel. Rose v. Wachovia Secs., LLC*, 208 Fed. Appx. 27, 29-30 (2d Cir. 2006) (noting that, on a motion to dismiss, a court may take judicial notice of documents filed in another court).

To survive a motion to dismiss, a party need only plead "a short and plain statement of the claim," *see* Fed. R. Civ. P. 8(a)(2), with sufficient factual "heft to 'sho[w] that the pleader is entitled to relief,'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007) (quotation omitted). Under this standard, the pleading's "[f]actual allegations must be enough to raise a right of relief above the speculative level," *id.* at 555 (citation omitted), and present claims that are "plausible on [their] face," *id.* at 570. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (citation omitted). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of "entitlement

6

to relief."'" *Id.* (quoting *Twombly*, 550 U.S. at 557).  Ultimately, "when the allegations in a complaint, however true, could not raise a claim of entitlement to relief," *Twombly*, 550 U.S. at 558, or where a plaintiff has "not nudged [its] claims across the line from conceivable to plausible, the[] complaint must be dismissed," *id.* at 570.

## IV. DISCUSSION

### A.    Deliberate Indifference

As a pretrial detainee at the time of the incidents addressed in the complaint, Plaintiff's claims are governed by the Due Process Clause of the Fourteenth Amendment, rather than the Cruel and Unusual Punishments Clause of the Eight Amendment.  *See Darnell v. Pineiro*, 849 F.3d 17, 29 (2d Cir. 2017).  The Supreme Court recently distinguished between Eighth and Fourteenth Amendment excessive force claims, holding that a pretrial detainee need not demonstrate that an officer accused of using excessive force was subjectively aware that his use of force was unreasonable.  *See Kingsley v. Hendrickson*, — U.S. —, 135 S. Ct. 2466, 2470-71 (2015).

In *Darnell*, the Second Circuit extended the *Kingsley* standard to a pretrial detainee's allegations related to unconstitutional conditions of confinement.  *See Darnell*, 849 F.3d at 35. The court reasoned, "[u]nlike a violation of the Cruel and Unusual Punishments Clause [of the Eighth Amendment], an official can violate the Due Process Clause of the Fourteenth Amendment without meting out any punishment, which means that the Due Process Clause can be violated when an official does not have subjective awareness that the official's acts (or omissions) have subjected the pretrial detainee to a substantial risk of harm."  *Id.*

Although *Darnell* involved a challenge to conditions of confinement, district courts in this circuit have held that *Kingsley* should also be applied to pretrial detainees' claims of deliberate

indifference to serious medical needs. *See Villafane v. Sposato*, No. 16-CV-3674, 2017 WL 4179855, *19 (E.D.N.Y. Aug. 22, 2017) ("District Courts in this circuit have applied *Kingsley* to claims for deliberate indifference to medical needs"); *Lloyd v. City of New York*, 246 F. Supp. 3d 704, 718 (S.D.N.Y. March 31, 2017) ("The reasoning of *Darnell* applies equally to claims of deliberate indifference to serious medical needs under the Fourteenth Amendment"); *see also Torrez v. Semple*, No. 17-CV-1211, 2017 WL 3841686, at *3 (D. Conn. Sept. 1, 2017) ("[F]or a claim of deliberate indifference to mental health needs or unconstitutional conditions of confinement under the Fourteenth Amendment, a pretrial detainee can satisfy the subjective element by showing that the defendants 'knew, or should have known, that the condition posed an excessive risk to health or safety'") (quoting *Darnell*, 849 F.3d at 35).

Under either the Eighth or the Fourteenth Amendment, a plaintiff's claim for deliberate indifference to a serious medical need is analyzed under a two-prong test. *Id.* at *18. "First, 'the alleged deprivation of adequate medical care must be "sufficiently serious."'" *Grimmett v. Corizon Med. Assocs. of N.Y.*, No. 15-CV-7351, 2017 WL 2274485, *3 (S.D.N.Y. May 24, 2017) (quoting *Spavone v. N.Y. State Dep't of Corr. Servs.*, 719 F.3d 127, 138 (2d Cir. 2013)). "Second, the defendant must have acted with deliberate indifference, or a 'sufficiently culpable state of mind." *Id.* (quoting *Chance v. Armstrong*, 143 F.3d 698, 702 (2d Cir. 1998)).

*1. Objective Prong*[4]

---

[4] The standard for establishing the objective prong of a deliberate indifference claim was not affected by *Darnell*. *See Feliciano*, 2017 WL 1189747, *10. Therefore, "the objective prong of a deliberate-indifference claim is the same regardless of whether the inmate is a convicted prisoner or a pretrial detainee." *Id.* The Court notes, however, that the term "objective prong" is somewhat misleading in the context of a Fourteenth Amendment deliberate indifference claim. As the Court explains below, after *Darnell*, both prongs of such a claim are now analyzed under an objective standard.

The objective prong requires "that the alleged deprivation of medical treatment is, in objective terms, 'sufficiently serious'—that is, the prisoner must prove that his medical need was 'a condition of urgency, one that may produce death, degeneration, or extreme pain.'" *Johnson v. Wright*, 412 F.3d 398, 403 (2d Cir. 2005) (quoting *Hemmings v. Gorczyk*, 134 F.3d 104, 108 (2d Cir. 1998)).  To determine whether inadequate care is "sufficiently serious," a court must "examine how the offending conduct is inadequate and what harm, if any, the inadequacy has caused or will likely cause the prisoner." *Salahuddin v. Goord*, 467 F.3d 263, 280 (2d Cir. 2006). Where a plaintiff alleges that inadequate care was provided—instead of alleging a failure to provide any treatment—the inquiry focuses on "the particular risk of harm faced by a prisoner due to the challenged deprivation of care, rather than the severity of the prisoner's underlying medical condition, considered in the abstract." *Smith v. Carpenter*, 316 F.3d 178, 186 (2d Cir. 2003); *see also Ray v. Zamilus*, No. 13-CV-2201, 2017 WL 4329722, *8 (S.D.N.Y. Sept. 27, 2017) (finding that where a "plaintiff suffered from a delay in treatment, rather than a complete lack of treatment, the objective element must be satisfied by harm that resulted from the delay").

Here, Defendants argue that Mr. Revels was provided medical care, and that Plaintiff fails to allege a deprivation of care that was sufficiently serious.  *See* Dkt. No. 27-1 at 17; Dkt. No. 30-2 at 7-11.  The Court disagrees.  A number of district courts in this circuit have found kidney failure to constitute a sufficiently serious medical condition to satisfy the objective component of a deliberate indifference claim.  *See Padilla v. Corr. Care Sols.*, No. 17-CV-1150, 2018 WL 550610, *4 (N.D.N.Y. Jan. 22, 2018) (D'Agostino, J.); *Rivera v. Fed. Bureau of Prisons*, No. 08-CV-5590, 2009 WL 585828, *5 (S.D.N.Y. Mar. 5, 2009); *Candelaria v. Greifinger*, No. 96-CV-17, 1998 WL 187383, *3 (N.D.N.Y. Apr. 15, 1998).

It is well established that the state "'is not constitutionally obligated . . . to construct a perfect plan for [medical] care that exceeds what the average reasonable person would expect or avail [him]self of' outside of prison." *Thompson v. Racette*, No. 11-CV-1372, 2012 WL 12884469, *2 (N.D.N.Y. Aug. 2, 2012) (alterations in original) (quoting *Dean v. Coughlin*, 804 F.2d 207, 215 (2d Cir. 1986)). A mere disagreement with a prescribed course of treatment is not sufficient to establish a violation of the Eighth or Fourteenth Amendment. *See Moolenaar v. Champagne*, No. 03-CV-1464, 2006 WL 2795339, *6 (N.D.N.Y. Sept. 26, 2006). But this is not a case of Plaintiff simply disagreeing with a particular medication or diagnostic technique. Plaintiff alleges that Mr. Revels was recovering from kidney cancer, and that he repeatedly tested positive for kidney problems, showed clear symptoms of kidney failure and other serious medical conditions, and even endured multiple "paralytic episodes." Despite these obvious signs of deteriorating health, medical staff at the jail allegedly failed to provide any treatment other than withholding some or all of Mr. Revels's medications. By the time Mr. Revels was hospitalized, he was past the point of recovery. Plaintiff alleges that the lack of treatment caused Mr. Revels's death. Therefore, Plaintiff alleges a sufficiently serious deprivation of care.

### 2. Mental Element Prong

"After *Darnell*, 'deliberate indifference' is now 'defined objectively,' and the 'Due Process Clause can be violated when an official does not have subjective awareness that the official's acts (or omissions) have subjected the pretrial detainee to a substantial risk of serious harm.'" *Lloyd*, 246 F. Supp. at 719 (quoting *Darnell*, 849 F.3d at 35). A pretrial detainee suing for deliberate indifference under the Fourteenth Amendment "is required to show only that the prison official acted with objective recklessness, or that the defendant 'knew or should have known' that 'an

excessive risk to health or safety' would result." *Grimmett*, 2017 WL 2274485, at *4 (quoting *Darnell*, 849 F.3d at 35).

    *3. Defendants Fricke and Farley*

    It has long been the rule in this circuit that "negligence, even if it constitutes medical malpractice, does not, without more, engender a constitutional claim." *Clay v. Kellmurray*, 465 Fed. Appx. 46, 47 (2d Cir. 2012) (quoting *Chance*, 143 F.3d at 703). Even after *Darnell*, it remains the case that "something more than negligence is needed to elevate a claim of medical misconduct to a constitutional tort." *Davis v. McCready*, No. 14-CV-6405, 2017 WL 4803918, *9 (S.D.N.Y. Oct. 23, 2017); *see also Darnell*, 849 F.3d at 36 ("But any § 1983 claim for a violation of due process requires proof of a *mens rea* greater than mere negligence"). But distinguishing between negligent and reckless medical care is a difficult task, especially at the motion-to-dismiss stage where courts lack the benefit of expert opinion. *See McCready*, 2017 WL 4803918, at *9. The distinction between the two "depends on the degree of risk associated with the practitioner's conduct." *Id.*

    In *Rivera v. Federal Bureau of Prisons*, No. 08-CV-5590, 2009 585828 (S.D.N.Y. Mar. 5, 2009), the court faced allegations very similar to the facts alleged in this case. While incarcerated, the plaintiff took a series of blood tests that indicated declining kidney function, but he received no diagnosis or treatment. *See id.* at 1. Eventually, the plaintiff was transferred to a different prison to receive medical attention for kidney failure and was told that he would need to begin dialyses within two to three years. *See id.* Even under the more demanding subjective test for Eighth Amendment deliberate indifference claims, the court found that the plaintiff had sufficiently alleged that the medical staff at the first prison was deliberately indifferent to his

medical needs.  *See id.* at *4; *accord Padilla v. Corr. Care Sols.*, No. 17-CV-1150, 2018 WL 550610, *4 (N.D.N.Y. Jan. 22, 2018) (D'Agostino, J.).

In this case, Plaintiff alleges that Mr. Revels's kidney function was repeatedly tested while he was in Schenectady County Jail, and that those tests consistently indicated dangerously poor kidney function.  Additionally, Mr. Revels displayed various, troubling symptoms, including severe bloating, weakness, fatigue, disorientation, incoherency, extreme weight gain, motor impairment, episodes of unconsciousness, episodes of paralysis, and confusion.  Plaintiff also alleges that Defendants Fricke and Farley were aware of Mr. Revels's declining health because they signed off on his blood tests and because Mr. Revels submitted numerous written complaints.  Defendants argue that Plaintiff has not plausibly alleged that Defendants Fricke and Farley knew or should have known of the excessive risk created by their failure to treat Mr. Revels's medical conditions.  *See* Dkt. No. 48 at 5.  But accepting all allegations as true and drawing all reasonable inferences in Plaintiff's favor, the Court cannot find as a matter of law that Defendants Fricke and Farley were not reckless.

### 4. John Doe Defendants

Plaintiff also brings a claim of deliberate medical indifference against three John Doe Defendants, who Plaintiff identifies only as medical staff at Schenectady County Jail.  *See* Dkt. No. 1 at ¶ 14.  The John Doe Defendants include the members of the medical staff who found Mr. Revels unconscious on November 18, 2015.  The CMC Defendants argue that those members of the medical staff were not deliberately indifferent because they provided "medical attention . . . when Mr. Revels was 'roused' after losing consciousness." Dkt. No. 30-2 at 10.  But the allegation that the John Doe Defendants merely "roused" Mr. Revels does not prevent the Court

from finding that Plaintiff plausibly alleges that the John Doe Defendants acted with objective recklessness.  Therefore, the motion to dismiss as to the John Doe Defendants is denied.

### 5. *Municipal Liability*

A municipality "may not be held liable under Section 1983 unless the challenged action was performed pursuant to a municipal policy or custom."  *Powers v. Gipson*, No. 04-CV-6338, 2004 WL 2123490, *2 (W.D.N.Y. Sept. 14, 2004) (citing *Monell v. Dep't of Soc. Serv.*, 436 U.S. 658, 694 (1978)).  This is because "[m]unicipalities are not subject to Section 1983 liability solely on the basis of a *respondeat superior* theory."  *Id.*, at *2.  As a result, to demonstrate *Monell* liability, a plaintiff must allege a violation of constitutional rights by employees of the municipality and "(1) 'the existence of a municipal policy or custom . . . that caused his injuries beyond merely employing the misbehaving officer[s]'; and (2) 'a causal connection—an "affirmative link"—between the policy and the deprivation of his constitutional rights.'"  *Harper v. City of New York*, 424 Fed. Appx. 36, 38 (2d Cir. 2011) (quoting *Vippolis v. Village of Haverstraw*, 768 F.2d 40, 44 (2d Cir. 1985)).

"Although *Monell* dealt with municipal employers, its rationale has been extended to private businesses."  *Powell v. Correc. Med. Care, Inc.*, No. 13-CV-6842, 2014 WL 4229980, *6 (S.D.N.Y. Aug. 15, 2014) (quoting *Rojas v. Alexander's Dep't Store, Inc.*, 924 F.2d 406, 409 (2d Cir. 1990)); *see also Feder v. Sposato*, No. 11-CV-93, 2014 WL 1801137, *6 (E.D.N.Y. May 7, 2014) ("Because Armor was hired to fulfill the state's constitutional obligation to provide necessary medical care for its inmates, Armor . . . [was] 'acting under the color of state law' for purposes of Section 1983").

"A plaintiff may plead a municipal policy or custom by alleging: (1) a formal policy, promulgated or adopted by the entity; or (2) that an official with policymaking authority took

action or made a specific decision which caused the alleged violation of constitutional rights; or (3) the existence of an unlawful practice by subordinate officials that was so permanent or well settled so as to constitute a 'custom or usage,' and that the practice was so widespread as to imply the constructive acquiescence of policymaking officials." *Shepherd v. Powers*, No. 11-CV-6860, 2012 WL 4477241, *9 (S.D.N.Y. Sept. 27, 2012) (internal quotation marks omitted).

Here, Plaintiff alleges that the inadequate care was caused by a policy or custom of CMC. *See* Dkt. No. 1 at ¶ 56. Indeed, the complaint contains pages of allegations regarding CMC's "policy and/or practice of not providing appropriate medical care." *See id.* But Plaintiff does not allege that CMC was responsible for providing medical care at the Schenectady County Jail. Instead, she alleges that CBH had that responsibility; it is not clear what role, if any, CMC played at the jail. *See id.* at ¶ 7. Although the complaint alleges, upon information and belief, that CBH is owned by CMC, it does not provide any further information regarding the relationship between the two entities. *See id.* Even if CMC does own CBH, that alone is not sufficient to hold CMC liable for CBH's conduct. *See DeJesus v. Sears, Roebuck & Co.*, 87 F.3d 65, 69 (2d Cir. 1996) ("As a general matter . . . a corporate relationship alone is not sufficient to bind [a parent corporation for the actions of its subsidiary]" (alteration in original)). Additionally, the complaint only mentions CBH a handful of times, and it does not contain any allegations that could allow the Court to conclude that CBH itself has a custom or practice of providing inadequate care.[5]

---

[5] The CMC Defendants move to strike large chunks of Plaintiff's complaint that are related to the allegations of municipal liability against CMC. *See* Dkt. No. 30-2 at 19-24. Since the Court dismisses the municipal liability claims against CMC and CBH, the motion to strike is denied as moot.

Similarly, Plaintiff's § 1983 allegations against the County Defendants rest entirely on CMC's alleged custom or practice of providing inadequate medical care. Since Plaintiff does not allege that CMC was responsible for providing medical care at the Schenectady County Jail, CMC's policies and practices do not provide a sufficient basis for establishing liability as to the County Defendants. Therefore, the County Defendants' motion to dismiss Plaintiff's § 1983 claims is granted.

## C.    State Law Claims

### 1. The County Defendants

The County Defendants' move to dismiss Plaintiff's state law claims against the County, D'Agostino, and Barrett. *See* Dkt. No. 27-1 at 7, 12. First, the County Defendants argue that Defendants D'Agostino and Barrett cannot be held liable for the acts or omissions of corrections officers, and that there is no basis for vicarious liability alleged in the complaint. *See id.* at 7 (citing *Barr v. Albany County*, 50 N.Y.2d 247, 257 (1980)). Second, the County Defendants argue that state law claims against the County must be dismissed because it may not be held vicariously liable for the acts of corrections officers. *See id.* at 12 (citing *De Ratafia v. County of Columbia*, No. 13-CV-174, 2013 WL 5423871, *10 (N.D.N.Y. Sept. 26, 2013)).

Plaintiff fails to address these arguments in her opposition to the County Defendants' motion to dismiss. Since Plaintiff does not assert any other basis for liability under state law against the County Defendants, Plaintiff's state law claims against the County Defendants are dismissed. *See Robinson v. Fischer*, No. 09-CV-8882, 2010 WL 5376204, *10 (S.D.N.Y. Dec. 29, 2010) ("Federal courts have the discretion to deem a claim abandoned when a defendant moves to dismiss that claim and the plaintiff fails to address in their opposition papers defendants' arguments for dismissing such a claim"); *see also Div. 1181 Amalgamated Transit Union–N.Y.*

*Emps. Pension Fund v. R & C Transit, Inc.*, No. 16-CV-2481, 2018 WL 794572, *4 (E.D.N.Y. Feb. 7, 2018) (collecting cases).

    *2. The CMC Defendants*

    The CMC Defendants argue that Plaintiff's state law claims should be dismissed because Plaintiff did not file a certificate of merit along with her complaint as required by C.P.L.R. § 3012-a. *See* Dkt. No. 30-2 at 18. The statute "requires counsel to submit a certificate of merit declaring that he or she has consulted with at least one licensed physician who is knowledgeable regarding the relevant issues in the action, has reviewed the case," and has concluded that there is a reasonable basis for commencement of an action. *Calcagno v. Orthopedic Assoc. of Dutchess Cty., PC*, 148 A.D.3d 1279, 1280 (3d Dep't 2017). However, "the mere failure to timely file [a certificate of merit] does not support dismissal of [an] action," *id.*, and Plaintiff submitted a certificate of merit on November 13, 2017, *see* Dkt. No. 50. Therefore, the CMC Defendants' motion to dismiss Plaintiff's state law claims is denied.

## V. CONCLUSION

    After carefully reviewing the entire record in this matter, the parties' submissions and the applicable law, and for the above-stated reasons, the Court hereby

    **ORDERS** that the County Defendants' motion to dismiss (Dkt. No. 27) is **GRANTED** and Defendants Schenectady County, Dominic D'Agostino, and Jim Barrett may be terminated; and the Court further

    **ORDERS** that Defendant Fricke's motion to dismiss (Dkt. No. 28) is **DENIED**; and it the Court further

    **ORDERS** that the CMC Defendants' motion to dismiss (Dkt. No. 30) is **GRANTED in part** as to the deliberate indifference and municipal liability claims against Correctional Medical

16

Care, Inc., CBH Medical, P.C., and Emre Umar, and the motion is **DENIED in part** as to

Plaintiff's state law claims and the deliberate indifference claims against Defendants Deiah

Farley, and John Does 1-3; and the Court further

  **ORDERS** that the CMC Defendants' motion to strike (Dkt. No. 30) is **DENIED as moot**;

and the Court further

  **ORDERS** that the Clerk of the Court serve a copy of this Memorandum-Decision and

Order on all parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

Dated: March 28, 2018
   Albany, New York

Mae A. D'Agostino
U.S. District Judge